COTTONWOOD FINANCIAL, LTD,
d/b/a The Cash Store, a foreign corporation,
Plaintiff-Respondent,

v.

Darcie ESTES, Defendant-Appellant.

Court of Appeals

No. 2009AP760. Submitted on briefs December 6, 2011.
—Decided January 31, 2012.

2012 WI App 12

(Also reported in 810 N.W.2d 852.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Eric L. Crandall* of *Crandall Law Offices, S.C.*, New Richmond.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Duffy Dillon of Brennan, Steil & Basting, S.C.*, Janesville.

Before Hoover, P.J., Peterson J., and Thomas Cane, Reserve Judge.

¶ 1. PETERSON, J. Darcie Estes appeals a judgment and an order confirming an arbitration award and an order compelling arbitration. Estes argues that the arbitration agreement was unconscionable and, therefore, unenforceable. In an opinion dated May 25, 2010, we concluded that the arbitration agreement was substantively unconscionable because it required Estes to waive her ability to proceed as part of a class. We therefore reversed and remanded for evidentiary findings on whether the agreement was also procedurally unconscionable.

¶ 2. In October 2011, the supreme court granted review, vacated our decision, and remanded for reconsideration in light of the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. __, 131 S. Ct. 1740 (2011). In *Concepcion*, 131 S. Ct. at 1746, 1753, the Supreme Court held that a state law that "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable[,]" and thus unenforceable, was preempted by the Federal Arbitration Act (FAA). In light of *Concepcion*, the classwide arbitration waiver in Estes's arbitration agreement is enforceable and is not substantively unconscionable. We

also reject Estes's arguments that the arbitration agreement is substantively unconscionable in several other ways. Accordingly, we affirm the circuit court's judgment and order confirming the arbitration award and order compelling arbitration.

## BACKGROUND

¶ 3. Estes took out a number of loans from Cottonwood Financial, LTD's The Cash Store, a payday lender. Each loan agreement contained an arbitration provision which stated that, with the exception of small claims matters, all disputes between the parties would be resolved by binding arbitration. Estes ultimately defaulted on the loans, and Cottonwood filed a small claims action to recover the outstanding balance. Estes counterclaimed, alleging violations of the Wisconsin Consumer Act, and as a result the case was converted to a large claims action.

¶ 4. Cottonwood then moved for an order staying the circuit court proceedings and compelling arbitration. The circuit court granted Cottonwood's motion, rejecting Estes's argument that the arbitration provision was unconscionable. The court later entered a judgment and order confirming an arbitration award against Estes, and Estes appealed.

## DISCUSSION

■■

¶ 5. "Unconscionability is an amorphous concept that evades precise definition." *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 31, 290 Wis. 2d 514, 714 N.W.2d 155. It is a determination to be made in light of a variety of factors not easily unifiable into a

formula. *Id.* The underlying principle is one of preven-
tion of oppression or unfair surprise and not of distur-
bance of allocation of risks because of superior bargain-
ing power. *Id.*, ¶ 32. "Unconscionability has often been
described as the absence of meaningful choice on the
part of one of the parties, together with contract terms
that are unreasonably favorable to the other party." *Id.*

■

¶ 6. The unconscionability analysis is as follows:

A determination of unconscionability requires a mix-
ture of both procedural and substantive unconsciona-
bility that is analyzed on a case-by-case basis. The more
substantive unconscionability present, the less proce-
dural unconscionability is required, and vice versa. A
court will weigh all the elements of unconscionability
and may conclude unconscionability exists because of
the combined quantum of procedural and substantive
unconscionability . . . .

Determining whether procedural unconscionability ex-
ists requires examining factors that bear upon the
formation of the contract . . . . The factors to be consid-
ered include, but are not limited to, age, education,
intelligence, business acumen and experience, relative
bargaining power, who drafted the contract, whether
the terms were explained to the weaker party, whether
alterations in the printed terms would have been per-
mitted by the drafting party, and whether there were
alternative providers of the subject matter of the con-
tract.

Substantive unconscionability addresses the fairness
and reasonableness of the contract provision subject to
challenge . . . .

No single, precise definition of substantive unconscio-
nability can be articulated. Substantive unconsciona-
bility refers to whether the terms of a contract are

unreasonably favorable to the more powerful party. The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are "commercially reasonable," that is, whether the terms lie outside the limits of what is reasonable or acceptable.

*Id.*, ¶¶ 33–36 (footnotes omitted).

■

¶ 7. Whether, under a given set of facts, a contract provision is unconscionable is a question of law that a reviewing court determines independently of the circuit court. *Id.*, ¶ 25. Here, because the circuit court concluded the arbitration provision was not substantively unconscionable, it did not address procedural unconscionability. *See Aul v. Golden Rule Ins. Co.*, 2007 WI App 165, ¶ 26, 304 Wis. 2d 227, 737 N.W.2d 24 (both components of unconscionability required to render a contract provision unenforceable). Likewise, if we agree there was no substantive unconscionability we may affirm without addressing procedural unconscionability.

¶ 8. Estes argues the loan agreements' arbitration provision is substantively unconscionable because it precludes her from proceeding as a member of a class. The arbitration provision states:

You are waiving your right to serve as a representative, as a private attorney general, or in any other representative capacity, and/or to participate as a member of a class of claimants, in any lawsuit filed against us . . . . [A]ll disputes including any representative claims against us . . . shall be resolved by binding arbitration *only* on an individual basis with you. Therefore, the arbitrator shall not conduct class arbitration; that is, the arbitrator shall not allow you to serve as a repre-

> sentative, as a private attorney general, or in any other
> representative capacity for others in the arbitration.

(Capitalization and bolding omitted; formatting altered). Estes contends this provision is substantively unconscionable because it violates the Wisconsin Consumer Act. *See* WIS. STAT. § 421.106(1) (stating that "a customer may not waive or agree to forego rights or benefits under" the Consumer Act); WIS. STAT. § 426.110(1) (recognizing a consumer's right to "bring a civil action on behalf of himself or herself and all persons similarly situated").[1]

¶ 9. The United States Supreme Court addressed a similar issue in *Concepcion*, 131 S. Ct. 1740. There, the Court considered "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Id.* at 1744. The Concepcions had entered into a cell phone service contract with AT&T, which required arbitration of all disputes between the parties but prohibited classwide arbitration. *Id.* The Concepcions sought classwide relief after AT&T charged them sales tax on the retail value of phones that were provided free of charge under the service contract. *Id.*

¶ 10. The federal district court denied AT&T's motion to compel arbitration, holding that the arbitration provision in the service contract was unconscionable because it prohibited classwide proceedings. *Id.* at 1745. The court relied on *Discover Bank v. Superior Court*, 113 P. 3d 1100, 1110 (Cal. 2005), in which the California Supreme Court held that class arbitration waivers in consumer arbitration agreements are unconscionable if the agreement is an adhesion contract, if

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

481

disputes between the parties are likely to involve small amounts of damages, and if the party with inferior bargaining power alleges a deliberate scheme to defraud. The Ninth Circuit affirmed, agreeing that the unavailability of classwide arbitration made the Concepcions' arbitration agreement unconscionable under California law. *Concepcion*, 131 S. Ct. at 1745.

¶ 11. The United States Supreme Court reversed, concluding that the FAA prohibits states from conditioning the enforcement of arbitration agreements on the availability of classwide proceedings. The Court reasoned that § 2 of the FAA, which requires enforcement of an arbitration agreement "save upon such grounds as exist at law or in equity for the revocation of any contract[,]" does not "preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 1745, 1748; *see also* 9 U.S.C. § 2 (2011). The Court then determined that requiring the availability of classwide arbitration conflicts with the "overarching purpose" of the FAA—"to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. Accordingly, the Court held that a state law requiring the availability of classwide arbitration was "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . [and was] preempted by the FAA." *Id.* at 1753 (internal quotation marks omitted).

¶ 12. *Concepcion's* holding is clear: the FAA preempts any state law that classifies an arbitration agreement as unconscionable, and therefore unenforceable, simply because the agreement prohibits an individual from proceeding as a member of a class. Accordingly, under *Concepcion*, the waiver of classwide proceedings

in Estes's arbitration agreement with Cottonwood does not render the agreement substantively unconscionable.

¶ 13. Estes also argues the arbitration provision is substantively unconscionable because it effectively waives her right to present any claims for injunctive or declaratory relief and restricts her right to appeal. Inexplicably, Estes neither recites the actual contract language purporting to deny her these rights, nor cites to the contract provisions in the record. She merely asserts her rights were impinged and, in some instances, misrepresents the contract language by omission. Indeed, there are no provisions denying Estes her rights to bring claims for injunctive or declaratory relief or to appeal. It appears her argument regarding injunctive and declaratory relief is based solely on an ambiguous statement in *Wisconsin Auto Title*, mentioning the unavailability of class-wide injunctive relief. *See Wisconsin Auto Title*, 290 Wis. 2d 514, ¶ 73.

¶ 14. Estes next argues the arbitration provision is substantively unconscionable because it reserves Cottonwood's, but not Estes's, right to proceed in small claims court. However, the record belies Estes's claim that she was precluded from initiating small claims proceedings. The arbitration provision specifically reserves both parties' right to proceed in small claims court.

¶ 15. Estes also takes issue with the loan agreements' governing law clause, which states: "This Loan Agreement will be governed by the laws of the State of Wisconsin, except that the arbitration provision is governed by the Federal Arbitration Act ('FAA')." The arbitration provision further provides: "The arbitrator shall apply applicable substantive law consistent with the FAA, applicable statutes of limitation, and

shall honor claims of privilege recognized at law." Because the arbitration provision explicitly provides that Wisconsin law shall apply, and because Estes has not identified any provisions of the FAA— much less any that would conflict with Wisconsin law—we are unable to conclude the governing law clause contributes to any substantive unconscionability.

¶ 16. Estes also argues the arbitration provision is substantively unconscionable because it waives her right to a trial, contrary to WIS. STAT. § 425.301(2) of the Wisconsin Consumer Act, which states: "Any right or obligation declared by chs. 421 to 427 is enforceable by action unless the provision declaring it specifies a different and limited effect." The Act does not, however, specify any right to trial. Further, the arbitration agreement does not require consumers to forego their right to proceed under the Act. Rather, it merely shifts the proceedings to a less formal, less expensive, and more expedient form. Thus, so long as no other rights under the Act are impinged, arbitration may, in fact, be beneficial to consumers. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995). Further, arbitration agreements are presumed valid under both federal and state law. *Perry v. Thomas*, 482 U.S. 483, 489 (1987); *Kemp v. Fisher*, 89 Wis. 2d 94, 100, 227 N.W.2d 859 (1979). Therefore, Estes's general attack on agreements to arbitrate, rather than litigate, fails.

¶ 17. Estes further assails the arbitration provision because it limits her rights to discovery and presentation of evidence. She does not bother, however, to identify the pertinent contract language or develop any argument. We may reject such undeveloped arguments. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527

484

N.W.2d 343 (Ct. App. 1994). In any event, Cottonwood responds that the arbitration provision merely explains in its introduction that discovery may be limited and that the parties have an opportunity to "present some evidence." Any limits will apply equally to both parties. Further, the arbitration provision prohibits the application of any rules of evidence, which simplifies and expands the presentation of evidence, acting as a counterweight to any limits on discovery. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).

¶ 18. Next, Estes asserts the arbitration provision is substantively unconscionable because it waives her ability to join her claims with other consumers. Except to the extent this assertion is subsumed within her separate argument pertaining to class action proceedings, Estes develops no argument pertaining to joinder. We therefore ignore this assertion. *See Flynn*, 190 Wis. 2d at 39 n.2.

¶ 19. Estes further claims the arbitration provision is substantively unconscionable because it permits the arbitrator to shift the cost of the arbitration to the consumer. Again, Estes does not cite to any specific language in the contract supporting her claim. The arbitration provision states that, regardless of who demands arbitration, Cottonwood is required to advance all expenses, including the filing, administrative, hearing, and arbitrator's fees. Under the agreement, if Estes prevails, she pays no costs. However, if Estes does not prevail, she is required to reimburse Cottonwood for the fees it advanced on her behalf. But, any reimbursement amount may not exceed the amount that would have been assessed as court costs if the dispute had been resolved in state court. Thus, Estes's costs could never be any more in arbitration than they would

be in circuit court. Furthermore, the provision actually favors Estes because if she prevails, not only will she not have had to advance any fees, but Cottonwood will be responsible for all costs—not limited by any amount that would have been assessed in circuit court.

¶ 20. Estes also asserts the arbitration provision grants the arbitrator discretion to deny the prevailing consumer his or her attorney fees. If true, Estes is correct this would be a significant infringement of her rights under the Consumer Act. The arbitration provision states: "If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses." Contrary to Estes's assertion, this permissive language does not conflict with the Act's mandate that costs and attorney fees shall be awarded to prevailing consumers. *See* Wis. Stat. § 425.308(1). Rather, the arbitration provision specifically refers here to "statute or applicable law" and, in another section, provides that Wisconsin law shall apply. Reading the arbitration provision as a whole, an arbitrator will be required to award prevailing consumers their costs and attorney fees pursuant to Wis. Stat. § 425.308.

██

¶ 21. Next, we address Estes's contention that the arbitration agreement's venue provision conflicts with the Consumer Act. Estes claims the venue provision authorizes arbitration outside her home county, contrary to Wis. Stat. § 421.401, which she asserts limits venue to a customer's home county. However, Estes misstates that statute's limitations. Paragraphs 421.401(1)(a)-(1)(c) permit venue not only in any county where (1) the customer resides, but also in any county where (2) the customer is personally served,

(3) collateral securing a transaction is located, (4) the customer sought the money borrowed, (5) the customer obtained the money borrowed, or (6) the customer signed the loan agreement.

¶ 22. The venue provision states that the arbitration hearing "will be conducted in the county of [the consumer's] residence, or within 30 miles from such county, or in the county in which the transaction under this Loan Agreement occurred, or in such other place as shall be ordered by the arbitrator." While consistent in part with the Consumer Act, Estes is correct that this provision permits arbitration in venues beyond those allowed by Consumer Act.

¶ 23. However, Estes has not replied to Cottonwood's argument that the scope of the venue statute is not as limited as Estes claimed in her initial brief. Estes has also failed to reply to Cottonwood's argument that the venue provision did not violate the Consumer Act because Cottonwood agreed to arbitrate in Estes's home county and a Consumer Act violation only occurs if a hearing actually takes place in an improper venue. Further, neither party has addressed a provision of the Act that renders invalid any provision "[t]hat fixes venue" in a consumer contract. *See* WIS. STAT. § 421.201(10)(c).

■■■■

¶ 24. Additionally, although Estes argues the venue provision is "contrary to" and "violate[s]" the Consumer Act, she has not developed an argument that this violation makes the arbitration agreement substantively unconscionable. The burden of proving unconscionability is on the party alleging unconscionability. *See Aul*, 304 Wis. 2d 227, ¶ 33. Estes's inadequately developed argument regarding the venue provision does not satisfy her burden.

¶ 25. Finally, Estes argues Cottonwood forfeited its right to arbitration by first initiating a small claims lawsuit against her. However, the language of the arbitration provision refutes Estes's argument. The arbitration provision states: "All parties . . . shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration." Here, Cottonwood sued Estes in small claims court, as permitted by the arbitration provision. When Estes filed her counterclaim against Cottonwood, the case was converted to a large claims action. At that point, Cottonwood moved for an order staying the circuit court proceedings and compelling arbitration. Cottonwood's actions were consistent with the arbitration provision's terms, and Cottonwood did not forfeit its right to arbitration.

*By the Court.*—Judgment and orders affirmed.